UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANKBIRSINGH RANKBIRSINGH,<br><br>Petitioner,<br><br>v.<br><br>THOMAS P. GILES, *et al.*,<br><br>Respondents. | Case No. 5:26-cv-00907-FLA (PVC)<br><br>**ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER [DKT. 2]** |

**<u>RULING</u>**

On February 25, 2026, Petitioner Rankbirsingh Rankbirsingh ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241 ("§ 2241"), challenging his detention as a violation of, *inter alia*, the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and applicable regulations.  Dkt. 1 ("Pet.").

That same day, Petitioner filed the subject Motion for Temporary Restraining Order ("Motion"), requesting the court order Petitioner's immediate release from Respondents' custody, without requiring bond or electronic monitoring, and enjoin Respondents from removing him from the United States during the pendency of these

proceedings. Dkt. 2 ("Mot.") at 1–2.[1] Respondents oppose the Motion. Dkt. 6 ("Opp'n"). The Motion was deemed taken under submission as of March 13, 2026. Dkt. 4; *see also* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the court GRANTS the Motion and ORDERS Respondents to release Petitioner from custody immediately and return all property to Petitioner that was confiscated from him when he was arrested and processed into detention. As Respondents have had notice and an opportunity to respond, and given the nature of the relief granted, the court CONVERTS Petitioner's Motion into a motion for preliminary injunction, as there is no benefit in additional briefing and the standard is the same. Respondents are ENJOINED from re-arresting or re-detaining Petitioner during the pendency of the subject *habeas* action absent express authorization by this court. The court exercises its discretion and waives the posting of a bond. *See* Fed. R. Civ. P. 65(c).

## BACKGROUND

Petitioner is a citizen of the Republic of India ("India"), who was apprehended and detained by United States Customs and Border Protection ("CBP"), after he entered the United States on or about September 3, 2018. Pet. ¶ 2; Dkt. 2-1 at 5. On or around November 21, 2018, Petitioner was released from custody on a $45,000 bond after an asylum officer found he had a credible fear of persecution if returned to India, based on his political beliefs. Pet. ¶¶ 68–69; Dkt. 2-1 at 8–24, 28, 30. Petitioner subsequently filed a Form I-589 (Application for Asylum and for Withholding of Removal, "Asylum Application"), which the United States Department of Justice received on August 22, 2019. Dkt. 2-1 at 26. As of the date of this Order, Plaintiff's Asylum Application remains pending.

/ / /

---

[1] The court cites documents by the page numbers added by the court's CM/ECF System, rather than any page numbers included natively.

On or around August 11, 2025, Petitioner was arrested re-detained by United States Immigration and Customs Enforcement ("ICE") without prior written notice, a warrant, or pre-deprivation hearing.  Pet. ¶¶ 3, 79.  Respondents have not cancelled the bond order or returned the $45,000 bond posted to the obligor.  *Id.* ¶ 85.  According to Petitioner, he has no criminal history and "has fully complied with all requirements to apply for asylum protection, to appear at immigration appointments when requested[,] and to comply with the laws of the United States following his unlawful entry to the [United States]."  *Id.* ¶¶ 87–88.

## DISCUSSION

### I.    *Habeas* Jurisdiction and Administrative Exhaustion

As an initial matter, Respondents argue the court should require Petitioner to challenge his detention by requesting a bond hearing before an Immigration Judge and administratively appealing any negative bond decision to the Board of Immigration Appeals ("BIA") before seeking *habeas* relief.  Opp'n at 5–6.  While Respondents acknowledge exhaustion of administrative remedies is not a jurisdictional prerequisite for filing a *habeas* petition, Respondents note "courts generally require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking such relief."  *Id.* at 6 (quotation marks and brackets omitted) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006)).

Petitioner contends prudential exhaustion is not required and would be futile here because Immigration Judges and the BIA do not have the authority to address Petitioner's due process claims.  Pet. ¶ 21.  The court agrees.  Petitioner challenges the constitutionality and sufficiency of the process by which he was arrested without notice or warrant, that his bond was *de facto* revoked, and that he was re-detained.  *E.g.*, Pet. ¶¶ 22–90.  This court has *habeas* jurisdiction under § 2241 to consider these claims, while Immigration Judges and the BIA do not.  *See Morgan v. Gonzales*, 495 F.3d 1084, 1089–90 (9th Cir. 2007) (recognizing Immigration Judges and the BIA

"[have] no power to grant relief on estoppel or substantive due process claims, and accordingly, [the Ninth Circuit has] never required petitioners to exhaust claims of this nature" before seeking *habeas* relief).

The court, therefore, will not deny the Motion on this basis. *See id.*

**II.    Legal Standard**

"[T]he usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963). "The status quo is the last uncontested status which preceded the pending controversy." *Id.* at 809 (citation and quotation marks omitted).

A plaintiff seeking a preliminary injunction or temporary restraining order "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

The Ninth Circuit follows a "sliding scale" approach to the four preliminary injunction elements, such that "a stronger showing of one element may offset a weaker showing of another, as long as plaintiffs establish that irreparable harm is likely." *Doe v. Kelly*, 878 F.3d 710, 719 (9th Cir. 2017) (cleaned up). The first factor, "likelihood of success on the merits[,] is the most import factor—and even more so when a constitutional injury is alleged." *Matsumoto v. Labrador*, 122 F.4th 787, 804 (9th Cir. 2024); *see also Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023)) ("If a

4

movant makes a sufficient demonstration on all four *Winter* factors …, a court must not shrink from its obligation to enforce his constitutional rights, regardless of the constitutional right at issue.") (cleaned up).

### III.   Analysis

    **A.   Apprehension, Detention, and Release of Aliens under the INA**

"An arriving noncitizen seeking admission into the United States at a U.S. Port of Entry is 'processed either through expedited removal proceedings or through regular removal proceedings.'" *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1156–57 (S.D. Cal. 2025) (quoting *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 507 (9th Cir. 2019)). "The regular removal procedure is also known as 'section 240 proceedings[,]' … [which] involve an evidentiary hearing before an immigration judge and the ability for the individual to apply for asylum if he would be persecuted upon return to his home country." *Id.* (citing 8 U.S.C. § 1229a(a)(1), (b)(1); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020)). "Noncitizens seeking asylum are guaranteed due process under the 5th Amendment throughout this process." *Id.* (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

8 U.S.C. § 1226 ("§ 1226") governs the apprehension and detention of aliens, and states in relevant part:

**(a) Arrest, detention, and release**

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) [detention of criminal aliens] and pending such decision, the Attorney General—

    (1) may continue to detain the arrested alien; and

    (2) may release the alien on—

        (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

        (B) conditional parole….

/ / /

**(b) Revocation of bond or parole**

The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien.

8 U.S.C. § 1226(a), (b).

"Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release [a non-criminal alien], under the conditions at [§ 1226(a)(2) and (3)]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."  8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8).[2] "When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained.  If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled."  *Id.* §§ 236.1(c)(9), 1236.1(c)(9).

"[W]here a previous bond determination has been made by an immigration judge, no change should be made by [ICE] absent a [material] change of circumstance[.]"  *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *see also* Opp'n at 5.

**B.    *Winter* Factors as to Petitioner's Due Process Claim**

A writ of *habeas corpus* may be granted to any petitioner who demonstrates "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(a), (c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional

---

[2] Pursuant to 8 C.F.R. §§ 236.1(b)(1) & 1236.1(b)(1), "[a] warrant of arrest may be issued only by those immigration officers listed in [8 C.F.R. § 287.5(e)(2)]."

function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474 (2004) (quotation marks and citation omitted). A petitioner "bears the burden of demonstrating that he is in custody in violation of the Constitution or laws or treaties of the United States." *Noori*, 807 F. Supp. 3d at 1159 (cleaned up).

Petitioner argues his arrest, the *de facto* revocation of his bond, and his re-detention violate his procedural and substantive due process rights under the Fifth Amendment because he was denied prior notice and an opportunity to be heard before a neutral arbiter. Pet. ¶¶ 3, 10, 79–85, 107–16; Mot. at 4. Respondents contend Petitioner "fails to submit any evidence sufficient to show that his release by ICE was not properly revoked," and that he "cannot demonstrate a putative re-detention violation that would justify habeas relief." Opp'n at 2. According to Respondents, the INA does not require advance notice or a hearing before arrest or re-detention. Opp'n at 3.

The Fifth Amendment guarantees that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. Although "[the] Fifth Amendment's protections do not extend to aliens outside the territorial boundaries [of the United States,] … once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno*, 507 U.S. at 306.

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (cleaned up). Courts weigh three factors to determine what procedural protections the

Constitution requires in a particular case: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 334–35; *see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Applying this test, the [Supreme Court] usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon*, 494 U.S. at 127 (emphasis in original) (collecting cases).

The first *Mathews* factor is Petitioner's private interest. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.[3] "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing, *e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding prison parolees have a due process liberty interest)).

Because Petitioner was released into the United States on bond in 2018, Dkt. 2-1 at 28, he was present in the country lawfully and has a significant liberty interest in remaining free from detention, which must be protected by adequate procedural safeguards. *See Morrissey*, 408 U.S. at 481–82 ("The parolee has relied on at least an

---

[3] The Supreme Court "has said that government detention violates [the Due Process] Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, or, in certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (cleaned up). Immigration removal proceedings are civil, not criminal, and courts assume they are nonpunitive in purpose and effect. *Id.*

implicit promise that parole will be revoked only if he fails to live up to the parole conditions. … [T]he liberty [of a parolee] is valuable and must be seen as within the protection of the Fourteenth Amendment."); *Becerra*, 787 F. Supp. 3d at 1093 (recognizing aliens released on bond have similar liberty interests).

The second *Mathews* factor is the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards. While "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). The INA grants the Secretary of Homeland Security and other authorized officials broad discretion to revoke bond and detain aliens. 8 U.S.C. § 1226(b); 8 C.F.R. § 236.1(c)(9). That discretion, however, is not unbounded and requires, at minimum, notice of the change of circumstances that form the basis of the revocation decision. *See Matter of Sugay*, 17 I. & N. Dec. at 640.

Based on the undisputed facts in the record, the court finds the risk of erroneous deprivation is considerable here. Petitioner was previously released on bond after DHS determined implicitly that he was not a danger to the community or a flight risk. Dkt. 2-1 at 28, 30. In the verified Petition, Petitioner alleges he was arrested without a warrant and re-detained without prior notice, identification of any change in circumstances, or pre-detention hearing. Pet. ¶¶ 79, 115. Respondents do not dispute these allegations and argue only that "[t]he government's authority to re-detain individuals previously released by ICE is discretionary," and "[t]he statute and regulations grant ICE the ability to unilaterally revoke any noncitizen's immigration bond and re-arrest the noncitizen at any time." *Id.* at 4 (citing 8 U.S.C. § 1226(b); 8 C.F.R. § 236.1(c)(9)). The court disagrees.

The government's exercise of discretion "must not be arbitrary, irrational[,] or contrary to law." *Santana-Figueroa v. INS*, 644 F.2d 1354, 1355 (9th Cir. 1981).

Congress' grant of discretionary authority does not license ICE to act with unchecked impunity and without providing any genuine explanation for its actions. At minimum, due process required Respondents to provide Petitioner with timely notice of the legal bases and reasons for his arrest, *de facto* bond revocation, and re-detention.[4]

There is no evidence in the record to suggest Respondents ever gave Petitioner such notice. Respondents have not presented any reasons or explanation to the court for why Petitioner was arrested and re-detained beyond their belief that they are empowered to revoke unilaterally any noncitizen's immigration bond and re-arrest the person at any time. *See* Opp'n at 4. The fact that Petitioner did not know whether Respondents would argue he was detained under 8 U.S.C. §§ 1225(b) or 1226, *see* Mot. at 13, clearly shows Petitioner was never provided with any notice of, or explanation for, his arrest and re-detention, and the *de facto* revocation of his bond. Based on the record presented, the court finds Petitioner was deprived of his liberty interest erroneously based on Respondents' abuse of their discretionary authority under the INA and applicable regulations.[5]

---

[4] Respondents also contend Petitioner's detention is lawful because "Petitioner is subject to a final order of removal, and that the government has taken steps to effectuate removal to his country of origin in the foreseeable future." Opp'n at 7–8. Respondents, however, also state Petitioner "does not yet have a final order of removal," *id.* at 2, and have not submitted any evidence that such an order has issued. The verified Petition states Petitioner's Asylum Application remains pending and that a final order of removal has not yet issued. *See* Pet. ¶¶ 8, 82, 87. Based on this record, Respondents have failed to demonstrate Petitioner is subject to a final order of removal.

[5] Respondents cite *Demore v. Kim*, 538 U.S. 510, 523 (2003), to argue § 1226 "does not require advance notice or a hearing before arrest or re-detention." Opp'n at 3. *Demore*, 538 U.S. at 513, involved the arrest and detention of a criminal alien who was subject to mandatory detention under § 1226(c), and does not support Respondents' assertion that they are not required to provide notice or a hearing before arresting and re-detaining a non-criminal alien who was released on bond and in full compliance with all terms of his release. Respondents additionally cite *Prieto-Romero*

Furthermore, ICE's decision to arrest and re-detain Petitioner, and revoke his bond, without any explanation appears to violate the APA, which provides in relevant part: "[a] reviewing court shall … (2) hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A).  "[T]he touchstone of 'arbitrary and capricious' review under the APA is 'reasoned decisionmaking.'" *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1080 (9th Cir. 2019) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983)).  "The agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (brackets, quotation marks, and citations omitted).

As stated, Respondents offer no explanation for why they chose to: (1) arrest, revoke the bond of, and re-detain Petitioner without providing any notice of, explanation for, or opportunity to be heard regarding their decision and actions; (2) detain Petitioner for six months without providing a hearing; and (3) provide Petitioner with only a bond hearing based on the length of his detention, without considering or addressing why he was not entitled to remain free on bond. Respondents' conduct, thus, appears to violate the APA.  *See Y-Z-L-H v. Bostok*, 792 F. Supp. 3d 1123, 1146–47 (D. Or. 2025) (finding Respondents' termination of an

---

*v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008), to argue "[d]ue process in the [§ 1226(a)] context is satisfied through post-detention custody review, including the opportunity to seek a bond hearing before an Immigration Judge."  Opp'n at 3–4. There, "[t]he parties agree[d] that § 1226(a) provided the statutory authority for the Attorney General's *initial* detention of [the petitioner]."  *Prieto-Romero*, 534 F.3d at 1058 (italics in original).  *Prieto-Romero* does not support Respondents' contention that a post-detention bond hearing is sufficient here, where Petitioner has challenged the constitutionality of his arrest, the *de facto* revocation of his bond, and his re-detention.  Accordingly, *Demore* and *Prieto-Romero* are inapposite to Petitioner's circumstances here.

asylum seeker's parole arbitrary and capricious in violation of the APA, based on Respondents' failure to provide any reason for the change to terminate petitioner's parole).

Accordingly, the court finds the risk of an erroneous deprivation of Petitioner's liberty interest was substantial based on Respondents' failure to provide any notice of, explanation for, or opportunity to be heard regarding Petitioner's arrest and re-detention, and the revocation of his bond.

The final *Mathews* factor is the government's interest. Respondents fail to establish the government has any interest in allowing Respondents to arrest Petitioner, revoke his bond *de facto*, and re-detain him without providing any notice of and explanation for their decision. Respondents, similarly, do not offer any argument or explanation for why Petitioner could not have been provided with notice and an opportunity to be heard *before* his bond was revoked *de facto* and he was re-detained, as is generally required under *Zinermon*, 494 U.S. at 127. Respondents, thus, fail to establish the government has any interest in Petitioner's continued detention.

After considering all three *Mathews* factors, the court finds Petitioner has met his burden to demonstrate a reasonable likelihood of success on the merits of his claims. The analysis of the remaining *Winter* factors (irreparable harm in the absence of preliminary relief, the balance of equities, and the public interest) overlaps with the *Mathews* analysis and favors granting Petitioner's request for injunctive relief and Motion. *See Matsumoto*, 122 F.4th at 804.

Finally, Respondents argue due process was satisfied because Petitioner was granted an opportunity to contest his detention at a bond hearing on February 12, 2026, but withdrew the request for the hearing. Opp'n at 2. Petitioner responds he received little notice of the hearing and that the hearing was only afforded based on "prolonged detention" and not on his arrest, the *de facto* revocation of his bond, and his re-detention. Dkt. 7 ("Reply") at 2 n. 1. According to Petitioner, he "withdrew the 'request' because he had not made the request, had just retained counsel, and because

12

he believed at that time he would only get one chance for hearing and had not had [an] opportunity to gather evidence to meet Respondents['] ever changing and nebulous standards for eligibility for release [on] bond." *Id.*

The Immigration Court's decision to offer Petitioner a bond hearing six months after Petitioner was arrested and re-detained, based solely on the length of his detention, cannot support Petitioner's continued detention when the underlying arrest, *de facto* revocation of bond, and re-detention were in violation of Petitioner's due process rights and, thus, invalid. [6] The court will not deny the Motion on this basis.

## CONCLUSION

For the reasons stated, the court GRANTS the Motion and ORDERS Respondents to:

(1) release Petitioner immediately under the same conditions as he was released prior to his arrest and re-detention;

(2) return all property to Petitioner that was confiscated from him when he was arrested and processed into detention; and

(3) file a statement with the court within one (1) business day of Petitioner's release, attesting to Respondents' compliance with this Order.

///

///

[6] Respondents argue Petitioner's immediate release would not be the appropriate remedy to any legal deficiency in his detention and bail proceedings, as the court could instead order them to provide Petitioner with an individualized bond hearing. Opp'n at 4–5. The court disagrees. The violations at issue here were Petitioner's arrest, *de facto* revocation of bond, and re-detention without notice of, any explanation for, or an opportunity to be heard regarding ICE's decision. The violation cannot be remedied adequately through a new bond hearing that addresses the separate and unrelated question of whether Petitioner's release is warranted due to the duration of his detention, as Respondents propose. Respondents, thus, fail to establish Petitioner's release from detention is not necessary to preserve the *status quo ante litem* pending a determination of the action on the merits. *See Tanner Motor*, 316 F.2d at 808.

Respondents are additionally ENJOINED from re-arresting Petitioner, revoking his bond, and/or re-detaining him during the pendency of the subject *habeas* action, absent express authorization by this court.

To preserve the court's jurisdiction, Respondents are ENJOINED from transferring, relocating, or removing Petitioner outside the Central District of California pending final resolution of this case or further order of this court.

The court exercises its discretion and waives the posting of a bond. *See* Fed. R. Civ. P. 65(c).

IT IS SO ORDERED.

Dated: May 20, 2026

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge

14